UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SHARON KOUADIO,

                          Plaintiff,                    08-CV-881-A

                                                                           DECISION and ORDER

                v.

MICHAEL J. ASTRUE, Commissioner
of Social Security

                          Defendant.

## INTRODUCTION

Plaintiff Sharon L. Kouadio ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of defendant Michael J. Astrue, the Commissioner of Social Security ("Commissioner"), denying plaintiff's application for Social Security Disability Insurance ("SSDI") benefits, and partially denying plaintiff's application for Supplemental Security Income ("SSI") benefits. Both parties moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Plaintiff alleged an onset date of June 18, 2005. In August 2008, the Administrative Law Judge ("ALJ") found that plaintiff was not disabled from June 18, 2005 through December 31, 2006, but that as of January 1, 2007, she met the disability standard. Plaintiff seeks reversal of the Commissioner's decision denying disability status from June 18, 2005 to December 31, 2006, arguing that the decision was not supported by substantial evidence. The Commissioner contends that the decision of

the ALJ was supported by substantial evidence in the record and should be affirmed. For the reasons set forth below, the case is remanded for further administrative proceedings.

## **BACKGROUND**

Plaintiff filed applications for SSDI and SSI benefits alleging that she could no longer work as of June 18, 2005 because of pain from neck and back injuries sustained in a February 2003 automobile accident. (Tr. 73; 77-78; 136; 302; 308; 310).[1] Plaintiff was forty-six years old at the time of her application, and had completed approximately a year and a half of a college education. (Tr. 73; 81; 300). Plaintiff's primary past relevant work was as a cook, and her date last insured for SSDI purposes was September 30, 2005. (Tr. 73; 78; 301-02; 304; 330). Plaintiff's applications for benefits were denied on December 7, 2005. (Tr. 54-57). A hearing was then held on June 10, 2008 before the ALJ, at which time testimony was provided by plaintiff and a vocational expert. (Tr. 296-337).

Plaintiff testified at the hearing that the her neck and mid and lower back pain ranged in severity between six and nine on a scale of one to ten (with ten being severe to the point of needing medical attention). (Tr. 312; 315-16). She indicated that from 2005 to the time of the hearing, her neck and shoulder pain "comes and goes," her arm pain became "more frequent," and her mid and lower back pain was "constant" as of 2005. (Tr. 312-15). Plaintiff also testified that she suffers from numbness and

---

[1] Page citations are to the transcript of the administrative record filed by the Commissioner as part of his answer.

sharp pains in her arms and legs. (Tr. 313-14; 316-17). With regard to her abilities and limitations, plaintiff testified that she could sit for ten to fifteen minutes, stand for less time than she could sit, only walk the distance of four houses before having to stop, and lifting five pounds was "very difficult." (Tr. 318-19). Plaintiff also testified that she needs to lie down for several hours during the day and that lying down is the most comfortable position for her. (Tr. 320).

In addition to her testimony at the hearing, plaintiff consistently reported on her disability paperwork from 2005 to 2008 that activities such as sitting, standing, walking, lifting, climbing stairs, kneeling, squatting, and reaching caused pain. (Tr. 88; 95; 103-04; 108-09; 114-15; 120; 126; 130). In 2005, plaintiff reported to Dr. Capicotto, one of her treating physicians, that her low back pain was "aggravated by prolonged sitting, prolonged standing and any activities such as lifting, pushing, pulling, bending and leaning." (Tr. 147). Also in 2005, plaintiff reported Dr. Lisak, another treating physician, that "[s]itting, walking, any movement makes [her pain] worse." (Tr. 203). During a consultative examination conducted by Dr. Balderman in 2005, plaintiff reported that she could only "walk half a block, stand 20 minutes, sit 20 minutes, climb a flight of stairs, and lift[] and carry 5 lb." (Tr. 171).

Dr. Gosy, a treating physician who began seeing plaintiff in May 2006, consistently opined in his treatment notes that plaintiff was 50% disabled. (See Tr. 211-29). Dr. Capicotto and Dr. Lisak did not provide opinions as to plaintiff's level of disability, and none of plaintiff's treating physicians provided opinions relative to her residual functional capacity. Dr. Balderman, who only saw plaintiff for the consultative examination in 2005, opined in that she had "mild limitations in bending and lifting due

3

to sciatica." (Tr. 172).

In a decision dated August 20, 2008, the ALJ concluded that plaintiff was not disabled between her alleged onset date of June 18, 2005 and December 31, 2006 (sometimes referred to herein as the "first period"), but found that she was disabled beginning January 1, 2007 (sometimes referred to herein is the "second period"). (Tr. 11-25). Despite medical evidence supporting plaintiff's claims of back and neck pain from the alleged onset date in June 2005 and beyond (in the form of numerous herniated discs at various levels), the ALJ found her symptoms did not preclude her from working before December 31, 2006, but that they did preclude her from working after that date. As a result of that determination, plaintiff was not entitled to any SSDI benefits because she was not found disabled before her last insured date of September 2005. (See Tr. 25).

Plaintiff requested that the Appeals Council review the ALJ's decision, but her request was denied on November 3, 2008. (Tr. 3-5). Therefore, the ALJ's decision became the final decision of the Commissioner. Plaintiff then filed the instant action seeking review of the ALJ's determination.

## DISCUSSION

### I. Jurisdiction and Scope of Review

Pursuant to 42 U.S.C. § 405(g), district courts have jurisdiction to hear claims based on the denial of Social Security benefits. On review, the district court may set aside the decision of the Commissioner "only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v.

4

Chater, 221 F.3d 126, 131 (2d Cir. 2000); see also 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla," and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

## II. The Disability Standard

In order to qualify for SSDI and SSI benefits, a claimant must not be able "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also id. § 1382c(a)(3)(A). The claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). In the case of SSDI claims, the claimant must also meet the insured status requirements set forth in 42 U.S.C. § 423(c). For SSI claims, the claimant must also satisfy the income and resource criteria as set forth in 42 U.S.C. §§ 1382, 1382a, and 1382b.

The following five-step sequential analysis is used to determine whether a claimant is disabled under the Social Security Act:

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.

Shaw, 221 F.3d at 132; see also 20 C.F.R. §§ 404.1520, 416.920.

### III. The ALJ's Five-Step Analysis

The ALJ divided his analysis of plaintiff's disability claim into two time periods. The first period ran from June 18, 2005, plaintiff's alleged onset date, through December 31, 2006 ("the first period"), and the second period ran from January 1, 2007 through the date of the decision ("the second period"). (Tr. 12).

Applying the five-step disability analysis, the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 15). At step two, the ALJ found that for the first period, June 18, 2005 until December 31, 2006, plaintiff suffered from the following severe impairments: 1) a two millimeter

central subligamentous disc herniation minimally impinging on the anterior aspect of the thecal sac at L5-S1; 2) a two millimeter subligamentous disc herniation effacing the anterior subarachnoid space without compressing the cervical cord at C4-C5; 3) C5-C6 degenerative disc disease with associated central disc herniation without evidence of disc herniation into the anterior epidural space and no evidence of cervical cord compression; 4) a two millimeter right-sided disc herniation minimally impinging on the anterior aspect of the thecal sac; 5) degenerative disc disease at T7 through T11 with disc space narrowing and disc dessication, concentric bulging disc, annular tears and central disc herniations without evidence of disc herniation into the anterior epidural space; and 6) mild left carpal tunnel syndrome. (Tr. 16). The ALJ also noted that plaintiff suffered from obesity, but found that it was not a severe impairment. (Tr. 17). However, the ALJ stated that he considered its "exacerbating effects." Id. Additionally, the ALJ found that plaintiff's reported depression disorder was not severe based on her testimony. Id. Finally, the ALJ found that plaintiff's thyroid disorder, high blood pressure, and gastroesophageal reflux disease were not "functionally significant" because they were well-controlled through treatment and diet. Id.

For the second period, commencing January 1, 2007, the ALJ determined that plaintiff had the following severe impairments: 1) C4-C5 disc herniation without cord compression; 2) L5-S1 moderate central disc herniation with moderate to advanced degeneration with pressure against S1 nerve root; 3) thoracic spine herniations without nerve root compression; and 4) myofascial pain syndrome exacerbated by obesity. (Tr. 22).

At step three, the ALJ concluded that plaintiff did not have an impairment

7

during either period that alone or in combination, met or medically equaled one of the listed impairments contained in Appendix 1 of the regulations. (Tr. 15-16). The ALJ specifically considered Listing 1.04(A), (B), and (C)) and Listing 1.00(B). See id.

Next, the ALJ assessed plaintiff's residual functional capacity ("RFC"), and found that for the first period, plaintiff retained the RFC to perform sedentary to light work with a sit/stand option (Tr. 22). The ALJ determined that plaintiff's condition worsened during the second period, and concluded that she retained the RFC to perform sedentary work, but could only occasionally lift and/or carry up to ten pounds, required a sit/stand option, and could only sit, stand, and/or walk a total of four hours during an eight hour day. (Tr. 22-23). The ALJ then found at step four that plaintiff could not perform her past relevant work beginning January 2007. (Tr. 23). The ALJ did not make a specific finding as to plaintiff's ability to perform her past relevant work during the first period.

At step five, the ALJ relied on his RFC assessment and testimony provided by the vocational expert at the hearing to conclude that plaintiff was not disabled and could perform other jobs during the first period. (Tr. 22, 24-25). During the hearing, the ALJ provided the following RFC assessment when posing questions to the vocational expert: "This person could do sedentary work but would need a sit/stand option. So it's a full range of sedentary but would need a sit/stand option." (Tr. 332). The vocational expert testified that someone of plaintiff's age, education, past work history, and the specified RFC could not perform plaintiff's past relevant work, but could perform the duties of a brake linings coater or a preparer. (Tr. 333). When asked by the ALJ whether the job examples she provided were exclusive, the vocational expert

8

said no. (Tr. 333-34). For the second period, the ALJ relied on his separate RFC assessment and the vocational expert's testimony that someone who must lie down for approximately half of the workday would not be able to be gainfully employed, to conclude that plaintiff was disabled beginning January 1, 2007. (Tr. 24; 334).

Plaintiff argues that the ALJ failed to properly evaluate plaintiff's complaints of pain, erred in placing controlling weight on the opinion of Dr. Gosy (one of her treating physicians) that plaintiff was 50% disabled, and also erred in analyzing plaintiff's obesity. The Commissioner argues that the ALJ properly evaluated plaintiff's credibility and obesity, and that the ALJ's evaluation of Dr. Gosy's opinion is supported by substantial evidence. For the reasons described below, the Court finds that the ALJ's decision is not supported by substantial evidence.

### IV. Substantial Evidence Does Not Support ALJ's RFC Determination for the First Period

As stated, the ALJ found that plaintiff had the residual functional capacity to perform sedentary to light work with a sit/stand option during the first period, but that after January 2007, plaintiff could only perform sedintary work during the second period. It is not clear why the ALJ found that plaintiff was able to perform light work during the first period, but not during the second period. It appears that the ALJ relied primarily upon a conclusory opinion by Dr. Gosy that plaintiff was 50% disabled. Dr. Gosy does not explain the basis for that conclusion. To the extent that the ALJ gave controlling weight to Dr. Gosy's opinion that plaintiff was 50% disabled, that was error. It is well established that the "ultimate finding" of whether a claimant is disabled is

reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(e)(1); see also Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) ("A treating physician's statement that the claimant is disabled cannot itself be determinative.").

Moreover, the medical evidence contained in the record does not support Dr. Gosy's conclusion that plaintiff was 50% disabled. When a treating physician provides an opinion on a matter reserved to the Commissioner, the ALJ must still evaluate the opinion in light of all of the other evidence in the record to determine the extent to which it is supported. See SSR 96-5p. Dr. Gosy first described plaintiff's disability level as 50%, explaining that: "Disability status is 50% because of the need for prolonged standing at her original occupation that she is unable to perform at present." (Tr. 229). Dr. Gosy did not point to any medical findings which would support the 50% designation, nor did he do so when continuing to opine that plaintiff was 50% disabled in his subsequent treatment notes. (See Tr. 211-29). Furthermore, Dr. Gosy's treatment notes do not contain any findings as to plaintiff's ability to sit and stand or perform other work-related activities on a prolonged basis throughout the day.

The ALJ states that the MRIs and the treatment records of Drs. Lisak and Capicotto support Dr. Gosy's 50% disability determination. Contrary to this conclusion, none of Lisak's or Capicotto's treatments notes contain a disability determination or provide an opinion as to the plaintiff's ability to sit and stand on a regular or continued basis. In fact, both Dr. Capicotto and Dr. Lisak recorded plaintiff's complaints in 2005 that sitting, standing, walking, and other activities worsened her pain. (Tr. 147; 203). Likewise, plaintiff told Dr. Balderman in 2005 that she could only "walk half a block, stand for 20 minutes, [and] sit for 20 minutes." (Tr. 171). Hence, rather than support

the ALJ's determination that plaintiff could sit and stand on a regular and continued basis throughout the day, the medical evidence and the plaintiff's own testimony contradict that conclusion.

Aside from Dr. Gosy's opinion that plaintiff could not work as a cook because of the prolonged standing requirements, there is only one other instance of a medical source opinion bearing on plaintiff's work-related functioning. That opinion was given by Dr. Balderman, a consultative examiner who saw plaintiff only once in December of 2005. (See Tr. 171-73). Dr. Balderman opined only that plaintiff had "mild limitations in bending and lifting due to sciatica," but did not express any opinion regarding plaintiff's ability to sit and stand over time. (Tr. 172). However, as stated, Dr. Balderman did record plaintiff's statements that she could only "walk half a block, stand 20 minutes, sit 20 minutes, climb a flight of stairs, and lift[] and carry 5 lb." (Tr. 171). In light of the fact that Dr. Gosy's 50% disability determination lacks support in is own treatment records and in the treatment records of others, the ALJ should have developed the record further to determine the extent of plaintiff's ability to stand or sit for a prolonged period of time.

The ALJ is also responsible for developing the record further where more information is needed to assist in his decision-making. See 29 C.F.R. §§ 404.1512(d)-(f), 404.1545(a)(3), 416.912(d)-(f), 416.945(a)(3); see also Loren v. Astrue, 553 F. Supp. 2d 281 (W.D.N.Y. 2008) (noting that the ALJ is obligated to develop the record even if the claimant is represented by counsel). Here, the ALJ failed to develop the record to support his conclusion that plaintiff could perform work with a sit/stand option. Such evidence was important to his determination because because sedentary work

11

generally requires approximately six hours of sitting and up to two hours of standing and walking in an eight-hour day. SSR 96-9p; SSR 83-10. Light work generally requires walking and standing off and on for approximately six hours, with intermittent sitting possible for the remaining two hours. SSR 83-10. Because the need to alternate between sitting and standing could decrease the jobs that a claimant could perform, "[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." SSR 96-9p. Here, the ALJ did not discuss the frequency of plaintiff's need to alternate between sitting and standing during the first period, nor did he question plaintiff in this regard[2] or request further information from any of her treating physicians. Furthermore, the ALJ did not discuss plaintiffs ability to perform any of the other physical functions that would be required for sedentary or light work, such as lifting and carrying. See 20 C.F.R. §§ 404.1567, 416.967.

It is also unclear as to why the ALJ found that plaintiff's obesity exacerbated her impairment after January 1, 2007, but not before that. Plaintiff was obese throughout the entire alleged disability period. Although she was only 215 pounds around her alleged onset date in 2005, (Tr. 77; 148), her treatment records show that she fluctuated between 230 and 244 pounds for most of the first period, i.e. from June 2005 until December 31, 2006. (See Tr. 148; 171; 192; 195; 197; 199; 203; 228; 288; 290; 292). That weight fluctuation continued into the second period, with her highest recorded weight being 258 pounds, only 14 pounds above her highest recorded

---

[2] Plaintiff's attorney did ask questions regarding how long she can sit, stand, walk, lift, and how long she lays down on a typical day. However, the questions were not directed at a specific time-period, but rather appeared to be directed at her limitations at the time of the hearing. (See Tr. 318-20). Plaintiff indicated that she could sit for ten to fifteen minutes before needing to get up or lie down, that standing was "worse" for her, that lifting five pounds was "very difficult," and that during normal work hours she lays down for about half of the time. (Tr. 318-20).

12

weight in the first period. (See Tr. 184; 186; 188; 190; 245; 276; 285; 236; 323).

The ALJ also failed to point to any medical evidence which provides support for his conclusion that plaintiff could perform sedentary to light work with a sit/stand option on a full-time basis during the first period.[3] Although Dr. Gosy opined that plaintiff *could not* stand for prolonged periods when concluding that she was 50% disabled, he did not provide details about what activities plaintiff *could* do and to what extent she could do them. Because RFC is the "most that you *can still do* despite your limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (emphasis added), Dr. Gosy's opinion does not provide substantial evidence in support of the ALJ's RFC assessment. Furthermore, Dr. Gosy's opinion appears to be inconsistent with the other medical evidence.

In light of the above considerations, remand is warranted for further proceedings on the issue of plaintiff's RFC for the first period. Once plaintiff's RFC is adequately assessed, the ALJ must re-examine whether there were other jobs that plaintiff could perform during that period. As remand is warranted on the basis of the errors committed in reaching the RFC assessment alone, the Court declines to address the other arguments raised by plaintiff. See White v. Sec'y of Dep't of Health & Human Servs., 910 F.2d 64, 65 (2d Cir. 1990).

---

[3] Indeed, the complaints that plaintiff expressed to Dr. Capicotto, Dr. Lisak, and Dr. Balderman in 2005, as mentioned above, suggest that plaintiff may not have been able to perform sedentary or light work even if given a sit/stand option. (See Tr. 147; 172; 203).

13

## **CONCLUSION**

For the reasons set forth above, this case is remanded for further administrative proceedings.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: December 2, 2010